The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business for the Honorable United States Court of Appeals for the Fourth Circuit are admitted to draw a knot and give their attention for the Court is now sitting. Godspeed to the United States and this Honorable Court. Be seated. Welcome, everyone, to the Fourth Circuit Court of Appeals. This morning we have two very interesting cases. And first of all, the point of personal privilege on behalf of my colleague Judge Diaz and I, we want to welcome our friend Judge Richardson. It's the first time Judge Diaz is not set with Judge Richardson on a panel in the Fourth Circuit. It's good to have you here, sir. Thank you, Judge. And the first case is the Casa de Maryland versus the Department of Homeland Security, Mr. Friedman. Good to have you here, sir. May it please the Court, I am John Friedman from Arlington Quarter for the Plaintiff Appellants. We would like to reserve seven minutes for rebuttal. I will use 15 minutes of the remaining time focusing on the Administrative Procedures Act claims. My colleague, Emily Dillingham, will use eight minutes on the issues raised in the cross appeal. We will rely on our briefs to address the other errors, warranty, and reversal unless the Court has questions. On the Administrative Procedures Act claims, the Court should reverse the... Mr. Friedman, can I just sort of ask a procedural question? As I understand it, I mean, the issues in this case have been enjoined six ways from Sunday, right? You've gotten the relief that you have asked for in various courts, I think. Is that right? That's correct, Your Honor. There are two entries of preliminary injunctions and one permanent injunction. So I guess my question is, how would a decision in this case from us, what difference would it make and why should we move forward given what's already happened thus far? So the case here is on a different procedural posture than the other cases. The government is appealing all those cases. They're working their way through the appellate. They've already filed a cert petition seeking review of the Ninth Circuit. We ultimately believe, and part of the relief that we're seeking and part of why we think remand is necessary is the administrative record here has never been completed. There are 20,000 documents, if we understand the government's filings in the Second Circuit correctly, that are part of the administrative record that haven't been produced in court. Given that two of the three decisions were preliminary injunctions, no full record was ever produced there. If those cases are remanded, we'll be in exactly the same position that those cases are. Even if those cases, even if those injunctions are lifted, we still have to go forward and those cases have to be assessed on their merits against a full administrative record. So this case would be in exactly the same posture. We have not moved for a preliminary injunction. Part of the reason we didn't is we wanted the administrative record, and by the time time was running short, other courts had entered injunctions. It's part of why we did not put that question to the district court. So we're simply here on the summary judgment on whether we get to go forward to a final adjudication on the merits. Just on the points of error on the Administrative Procedures Act. So there are really two points I want to focus on. The first is the failure of the district court to address, answer summary judgment without ascertaining whether it had the full administrative record here. The proffered administrative record in this case is demonstrably incomplete. We noted that below. We asked for discovery to require supplementation of the record. Section 706 of the Administrative Procedures Act... Is it typical to seek discovery in an APA case? I mean, the administrative record is the record, right? So what do you need discovery for? There are two issues. One is whether the record produced was the whole record before the agency. That is the standard under 707 of the APA. That's a separate issue from whether or not you need additional discovery. That's right, and we've moved for both. If you look at our Rule 56 declaration below, we noted that the administrative record was incomplete. We noted that in our brief below. So you're going to do discovery on whether the administrative record is complete. That's right. Many of our questions were, there are other individuals we identified, 19 individuals from DHS that we were able to identify, six individuals from other government agencies who participated. But you agreed that you're not entitled to the deliberative discussions that were had internally. You're entitled to the record that was before the decision-maker, and there was a decision-maker in this case, and the government says this is the record that was before her. There's an agency in this case that made a decision. And that agency is headed by a single person. That's right, and discovery... You're talking about Acting Director Duke. Yes. Is that what you're saying? I am, but I'm also saying... That's the decision-maker you're referring to. I'm referring to an agency decision. Now, Acting Secretary Duke signed the memo, but discovery, and we put forward depositions from taking other cases, identifying 19 individuals who assisted her. But the statutes require that the secretary make those decisions. Sometimes it refers to the Attorney General by virtue of the change. But they give that authority to the secretary, not to some staffer that's down below her. But it's black-letter APA law that if the head of an agency is assisted by others, and here we put forward evidence, and we ask for additional evidence that individuals assisted her, the documents considered by the agency should be part of the administrative record. I guess the problem here is that the principal person who assisted her, at least from your point of view, is the Attorney General, who told her that this policy was illegal. She acted on the basis of that legal advice. That's either wrong or right, but what else do you need? Well, our view is it's wrong. We also brought claims, an APA claim, that the decision here was motivated by bad faith and animus, and that decision could not, the district court could not have... But if the decision was compelled by proper finding by the Attorney General that the policy was illegal, what does it matter whether she acted or not with animus? Either that's correct or not, that should be the end of the matter. Well, that's one of our claims, and I agree that if you rule for us on that claim, you don't need to reach other claims. It wasn't... Has the district court done anything else once she received the letter from Attorney General Sessions of September the 4th? Could she have made any other decision other than what she did on September the 5th? Yes, she could have. She could have rejected that? She could have, or she could have said, I'm going to consider how this plays out and what the 800,000 people in their communities who have relied on this decision, the individuals who are beneficiaries who were brought here as children, she could have said, okay, well, let's go back and let's see if there's anything else we can do that provides some measure of interim relief. There are a whole range of things she could have done. We're here on a particular administrative decision. Judge Richardson, with regard to your deliberative privilege question, I do want to come back to that, because deliberative process privilege is not absolute. It's not an absolute privilege. We can make a showing of need the same as other types of privilege. So the fact that there are documents out there that the government says carte blanche are all entirely deliberative isn't the end of the question. Just looking at... Can you turn for a second and talk about why we're looking at the reviewability of this question at all? And obviously this is the sort of question about whether the grant of deferred action, as Justice Scalia indicated in the AADC case, is an exercise of discretion, and by virtue of that it is unreviewable. I don't understand your argument, I think, to be, well, this is some programmatic substantive decision. It's not just discretionary, and so therefore it's reviewable. Is that really your argument? That's one of two arguments that we're making. Give me the other argument. So the other argument is that if you look at the committed to agency discretion under law, section 701A2, one, that doesn't apply to our constitutional claims at all, so that's fair. And secondly, the court's interpreting the leading precedent on this, Cheney v. Heckler, have concluded that if the decision is based on a legal principle, something that gives... That's foreclosed. I agree, you have one case in the Ninth Circuit that says that, right? But otherwise the courts reject that. That's the BLE line of cases. I actually don't think it's the BLE line of cases. The Ninth Circuit did just rule that way. The D.C. District Court Judge Bates ruled that way. No, no, I'm talking about the Midwest Oil or whatever that suggests that a legal reason for an otherwise unreviewable decision renders it reviewable. The only court that I know that pre-this litigation suggested that was the Ninth Circuit. That's been rejected by the D.C. Circuit. It's rejected by BLE. So I think that it actually hasn't been rejected by the D.C. Circuit. If you look at the UAW v. Brock case, for example, I think that that holds, that if the agency reasoning is based on a legal determination, and if you look at the Heckler case... But not in cases where there's prosecutorial discretion, right? I mean, you're assuming a way that it's a prosecutorial discretion case. We are arguing that this is not just a case of prosecutorial discretion, that there is DOC involved in a range of programs. That's the Fifth Circuit's reasoning in the Texas litigation. And ultimately, your position, so that I understand it, is that Judge Smith, in essence, got it right in striking down DACA because DACA, like now you say the recession, is not prosecutorial discretion. It's programmatic, substantive grant of benefits, including employment. That is one of our two arguments. I think that the other argument is that it's predicated on legal... Fundamentally here, because under Heckler, the question is whether there's a meaningful standard against which the agency action can be assessed. If a legal rationale is being applied, that provides a meaningful rationale. But just to be clear, so one of them is that the legal basis changes it to being reviewable, and the second argument you're making is that Judge Smith, in essence, got it right in striking down DACA, that DACA is not prosecutorial discretion. It's a substantive, affirmative grant of benefits. It's programmatic, as you say. It's more, I mean, I think in Judge Smith's words, deferred action is much more than a non-enforcement action. Now, there are other courts that have ruled that way. I think the court in Brooklyn also had a similar finding. The district court in the 2nd Circuit. That's right. Is that on appeal in the 2nd Circuit now? It is. It's scheduled to be argued next month. But Judge Smith, I thought the 5th Circuit's decision was limited to DACA, not DACA. It is. That's not this program. That's the parents' program. That's right. The children's program was in Brooklyn. The children's program was in California. The children's program was in D.C. That's right, Your Honor. Anywhere else? Here. Four places. Four places, Your Honor. And all of those district courts have held that it's reviewable. That's right, and I should add there's a fifth place. Including this one, and that's on the cross-appeal. That's correct, Your Honor. I should add there's a fifth place, which is that the Texas, there's a new case in Texas that also concerns the children's program, which also concluded reviewable. But determined it was reviewable basically all on different grounds. One of the two grounds that we're asserting here. I do think it goes back to fundamentally – And there's only one court of appeals that's ruled on it, and that's the 9th Circuit. That's correct, Your Honor. And two of the three judges said it's reviewable under the APA. Two of the three judges. At least two. I don't know – Well, Judge Owens, I thought he disagreed with it. He did. He dissented and disagreed. Well, he called it a concurrence, but he dropped a footnote in it. He said he would oppose a preliminary injunction on the basis of the equal protection claim. That's correct. I think this all goes back to the point, though, that the Heckler agency action, I mean, there's a presumption that agency action is presumptively reviewable under the APA unless it's committed to agency discretion by law. If you look at this court's precedent in Contreras-Mendoza v. Holder, the Supreme Court case in mock mining, I'll suggest that the presumption is that you ought to be able to review. That's how every court has come down on this question. Just turning back to the substance of the APA, because I think we've talked about the record. The failure, even without a complete record, there were fundamental errors in the decision, each of which independently require reversal. In this point, just so we understand, when you're evaluating the substantive APA claims, we're only doing that if you find that it is substantive, right, that it's not just an exercise of prosecutorial discretion totally committed to the agency. That's right, Your Honor. So the agency decision was based on a fundamental mistake of law. The decisional member— In a prosecutorial discretion, is that solely committed to the attorney general? So Heckler points to some exceptions. The question, I think, fundamentally under Heckler is whether there's a standard, meaningful standard to apply. Many cases of criminal prosecution, there's not going to be some standard that a court can look at. So the prosecutor's decision to prosecute or not prosecute is not going to be reviewable. But that's exactly the example the court gives in Heckler, right, where the court says, or maybe this is BLE, where the court says, listen, often, I think this is BLE, often a prosecutor stands up and says, I would love to prosecute this guy, but I can't because the law will not sustain a conviction. And that is a legal conclusion. The law will not sustain a conclusion that would be reviewable, and yet everybody acknowledges, including the court in BLE, that that is unreviewable. And I think what Heckler points, though, is that if in an agency decision, because the agency is not functioning here as a prosecutor, and here we're talking about the rescission of a program, so it's fundamentally not a— You're talking about the decision of acting director Duke? Yes. Or whatever, acting secretary. But now, so the attorney general, he's the only one that can exercise prosecutorial discretion. Anything that she exercises is not prosecutorial discretion. I think that's fair. Although in— That's been my understanding forever. I thought the attorney general was the prosecutor. I think that's right under the INA. Although— In everything in the government, the attorney general is the prosecutor. Certainly for federal crimes, certainly for— That's what I'm talking about. I'm talking about the federal crimes. These other people are administrators. I mean, secretaries and things. They can refer things to the attorney general, maybe, but anyway. But he wrote that letter, and maybe he gave her all the authority. I don't know. Did he sign that off? You take all the time. As long as you get questions, you answer them. We only have two cases this morning. We're going to—you're going to hear us out, and we're going to hear you out. But we talk about prosecutorial discretion. I think Judge King's right. It's sort of a misnomer. But the court in Heckler was referring to the FDA commissioners being able to exercise discretion of whether to seek civil remedies. And here, the same idea. The secretary— The FDA director is not a prosecutor. Attorney Hill is the prosecutor. For criminal purposes, but not necessarily for civil purposes, right? For—I believe the attorney general under the INA does have the power to institute proceedings. I think, though, that you are right. Speaking about this in terms of prosecutorial discretion isn't the point of Heckler. The point of Heckler is whether there's a meaningful standard that can be applied. Here, every court that's looked at this question has concluded either that this doesn't fall into the realm of prosecutorial discretion because it's not fundamentally deferred actions, or what happens here is not the exercise of prosecution, or they've concluded that there's sufficient law, that the decision here was predicated on a mistake of law, which is something that a court can evaluate. But this is sort of back to the AADC point, right? In the decision there of the Supreme Court, the grant of deferred access is the discretion of the secretary that we're referring to. That's the discretionary decision that it analogizes in Heckler to criminal prosecutorial discretion as being civil prosecutorial discretion. I mean, I think the point of AADC is the 1252G is narrowly construed to the actual commencement of... Right, but it says expressly that the grant of deferred action is the discretion of the secretary to proceed on enforcement actions or not. That's right, and that's why focusing on the decision here, it's not whether individuals get deferred action or not. That is not what we're challenging. We're not seeking to have any particular individual get a grant of deferred action. We are challenging the agency's decision to rescind a policy based on a fundamental mistake of law. No further questions. Thank you. Now, the next argument is on your side, too. Yes, Ms. Dillingham. Ms. Dillingham. We're pleased to have you here. Good morning, Your Honor. May it please the Court, my name is Emily Dillingham, and along with my colleague, Mr. Friedman, I represent the plaintiff appellant in this matter. We ask this Court to uphold the district court's decision with respect to two issues. First, the granting of summary judgment for the plaintiffs on their estoppel claim, which prohibited the government from modifying its information sharing policy in connection with the rescission of the DACA program. And second, issuing a nationwide injunction to enforce that estoppel. I'd like to turn first to the estoppel claim. Talk to us first about why we should find that there's a freestanding equitable estoppel claim that can be. I mean, it's not from a statute. We're not saying it's common law. Where does it come from? It actually, Your Honor, it does come from common law. This isn't a claim for equitable relief. The Supreme Court has recognized that such claims may run against the government. They found that. They left the door explicitly open for that. Wait, wait, did they find that or did they not decide that? They left the door open. This Court actually has found that such a claim can run U.S. v. Cox. The Ninth Circuit found the same in Watkins v. Army. The Supreme Court left the door open for those claims in Heckler and OPM v. Richmond. The standard for an estoppel claim against the government requires a finding of affirmative misconduct, which we believe exists here. As the district court noted, the government induced these immigrants under the guise of immigration protections to turn over their most sensitive personal information. That includes their past criminal records, whether they've previously been placed in removal proceedings, other highly sensitive information about their family members. The district court said that the use of the same information to track and remove them could constitute affirmative misconduct. Judge Bates, in his separate opinion in this case, looked to a frequently asked questions portion of the government's website, where the government affirmatively asserted that its policy had, in fact, not changed. And he relied on that, in addition to some other reasons, for not granting relief on the estoppel claim in that case. Why is that not determinative here? Two reasons, Your Honor. The first is that that document is not, in fact, properly before this Court. It was not part of the underlying document. You can't take judicial notice of it? The Court certainly could take judicial notice of it. I will note that that document itself is, in fact, internally inconsistent. If you look at that document, it does say the government has not changed its information policy, but it also then still uses the changed information policy language. It notes that, again, the change in the information policy that we referred to in our complaint was that it went from, your information will not be shared, will be protected from disclosure to immigration enforcement agencies to generally- Except in exceptions. You agree that will not except for, and it lists out at least three different exceptions. I do, Your Honor. I do agree that there were exceptions in the original policy. In the changed policy, it noted generally we will not proactively share your information with immigration enforcement agencies. Subject to the same exceptions. That's correct, Your Honor, although with, again, some additional exceptions. Those included national security, which was, of course, not a rationale for DACA rescission, and a public safety exception that had not been referenced in the earlier information sharing policy. Again, if you turn back to the frequently asked questions document that Judge Bates referred to in his decision, that document, once again, is internally inconsistent. It does say that the government does represent that the policy has not changed, but within that same document, in fact, within that same paragraph, it says we will not proactively share your information. So even within that document that Judge Bates referenced, the government did, in fact, change its information sharing policy. Isn't it reasonable to read the language with respect to rescission, superseding, et cetera, that language that suggests the government could change the policy to suggest that that change could be retroactive? I mean, you wouldn't need to have that language prospectively because once the government changes the policy, that's it. It doesn't need to say that, that it might change prospectively. So what's wrong with reading it that way? I think what's wrong with reading it that way is that was not how it was ever presented to DACA applicants, to DACA recipients when it was rolled out in 2012. At the time, the government was encouraging individuals who were eligible for the program to come out of the shadows, to provide their information so that they could, in fact, receive status, so that they could build their lives based on a promise from the government. And so reading that policy in context, individuals relied on the fact that that information was not going to be shared with immigration enforcement agencies. I think Judge Diaz's point is how could that be a reasonable reliance where it says at the end, we can change this at any time. If it was a contract, you certainly wouldn't have said that's reasonable reliance, right? If there was specific contractual language, perhaps that would be correct. I think under Paris Sinderman, you have to consider the fact that there was a course of conduct between the government and these individuals. We have declarations attached to our complaint noting at least six individuals who specifically said they relied on the promise that their information would not be shared. But the question is whether it's reasonable, right? If it says, hey, give us this information, we're not going to use it, but by the way, we can change that policy about using it at any time, how reasonable would that reliance be? That's the question. I understand you may have somebody who can claim at least subjectively that they relied, but how do we say that that's a reasonable reliance? I think the answer to that is when you look at the context of the full program. First of all, that the government was in fact sort of recruiting people to join this program and the fact that nearly 800,000 people opted into this program. Had they believed that their information would be subject to sharing with immigration enforcement agencies for the potential to have them removed, deported, placed in other immigration enforcement proceedings, they simply would not have shared this kind of information. That's a balance for them to make, right? I mean, that to me seems like they get to make that choice, right? Listen, this administration is saying they're going to protect my information, but they're telling me they might change their mind, right? And so I weigh that balance and I decide the benefits you're going to give me is worth that risk  And there certainly was a risk of the information that the policy could be changed, but there was never any indication that it would be changed retroactively. Reading it in context and, again, given what the government was trying to do in recruiting people to join this program, the reasonable reading of the policy is that it would be a prospective change. Does there have to be a specific attempt to use the information in an individual context in order to get relief here? I mean, you don't have any evidence that the government has used this information in a way adverse to one of your clients, do you? Not specifically. We do point in our complaint to six individuals who did have DACA status who were placed into removal proceedings. We don't know how that information is shared. Placed in what kind of proceedings? They were placed in removal proceedings, Your Honor. We don't know how that information was shared. You don't know if it was shared? You're right. That's correct, Your Honor. We don't know if it was shared. But do we actually need that at this point? No, we don't. The fact that the individuals relied on this information to their detriment, there is a risk of imminent irreparable harm here. Isn't that an Article III problem that you say, listen, you know, I don't even know if the government did what I think is wrong. I don't see how they have standing to make this speculative claim that maybe there's some chance that somebody might have done something that they weren't supposed to. And, Your Honor, they do in fact have standing under the Susan B. Anthony List case. There is a risk that they would be placed into removal proceedings. We know that some of these DACA recipients – Well, but it would seem to me that that would be the opportunity to raise the challenge, right? Well, under the law, under the Steffel case, you don't actually have to have been placed in removal proceedings in order to challenge the law. If the risk is imminent, if there is – But you say your folks have been placed in removal proceedings. Not our specific plaintiffs, Your Honor. But, again, some of these people are subject to final orders of removal, which means that they are subject to expedited removal. We could be talking days or even hours. There's simply not a chance to seek relief having to go to that step. And, frankly, the law does not require it. The law simply requires that you face a credible fear of imminent risk of irreparable harm to have standing here to challenge this and to be subject to injunctive relief. Your Honors, I see that my time is up. No further questions. Thank you. Thank you very much. Mr. Mupan, good to have you here, sir. Steve Ack, may it please the Court. Asha Mupan for the United States. I'd like to begin with the reviewability question, both because it's a threshold issue and because, if we're correct on that, it moots all their summary judgment arguments about the state of the record. Before we get to that, and sorry to cut you off before you get to where you want to start, I want you to start by answering Judge Diaz's first question, which is, what difference does it make here? Why should we make a decision, given that there are conflicting decisions now across the country from District of Maryland is in conflict with all these other districts, is in conflict with the Ninth Circuit? Why is it that we should make a decision here? The government doesn't think you actually need to, Your Honor. We do think that, as Judge Diaz suggested, because there are two nationwide injunctions in place right now, which protect the plaintiffs, and because the Court is considering, at the moment, a cert petition that we filed. If the Court were to grant cert, which they would presumably do. You filed three of them, didn't you? Yes, we filed a cert petition. You filed three cert petitions. When, in November? Yeah, I believe it was in November. And they're still pending? They are pending. I believe they should be considered in early to mid-January, given the Court's calendar. And if the Court were to grant those, it would be presumably. They haven't been responded to? The responses have not yet come in. The timing is such that the responses should come in and the replies should come in, such that it will be considered by the Court in early January. And what you want to do there is you're trying to skip the courts of appeals? Well, no, the Ninth Circuit has already ruled. Well, they hadn't ruled when you filed the petition. They hadn't. All of them were cases that were pending in the district courts, right? Well, no. They were pending on appeal, but they had not been decided. That's right. But the Ninth Circuit has now ruled, so it's a regular cert petition. We've also asked for cert before a judgment from the D.C. Circuit case because it has the Nielsen Memo Square. That's Judge Bates. Yes. You got a cert petition on his opinion and a cert petition from Brooklyn? That's correct. But isn't part of this that, like, I mean, this is the whole part of the Supreme Court, right? They want lower courts to develop the law so that they have the benefit of those views in evaluating those decisions. That's why generally the Supreme Court doesn't grant cert unless they're split. Obviously, there are lots of exceptions to that. And while there's a split with a district court decision here, there's not a split otherwise. And so it seems a bit like an advocation for us to say, well, we'll just, like, wait and see what happens elsewhere. Well, Your Honor, while you're right that the court normally waits for a split, the court also normally will grant when there's a nationwide injunction against a major national policy. That's what the court did when they granted cert from the Fifth Circuit's decision against DAPA. We hope that the court will grant cert in this case. If the court does grant cert in this case, which we'll know in early to mid-January, just as a matter of pure judicial administration, I'm not sure it makes a whole lot of sense for this court to try to rush out an opinion when they'll have guidance from the Supreme Court. Of course, if the Supreme Court denies cert, which you would, again, know in early to mid-January, the court is in a position to then at that point rule. So if I could turn back to the reviewability issue, I think there are two steps to the analysis whether something is committed to agency discretion by law under Heckler v. Cheney. The first question is, is this the type of issue that is committed to agency discretion? And then the second is, does the nature of the rationale given matter? As to the first of those two questions, we know from Heckler v. Cheney that enforcement decisions are presumptively committed to agency discretion by law. They are a form of prosecutorial discretion. To be sure, Judge King, it's not criminal prosecution. You're talking about committed to the discretion of the Secretary of Homeland Security. Exactly. Not to the Attorney General. Right. Just as in Heckler v. Cheney, the FDA had enforcement discretion about whether to bring civil actions to enforce the Food, Drug, and Cosmetics Act, the Department of Homeland Security is the agency that's vested with enforcement discretion about whether to remove aliens who are here unlawfully. That is the form of enforcement discretion that we're talking about because DACA was a form of non-enforcement. It was a non-enforcement policy. I guess I'm still having trouble understanding how you can have discretion in the face of a pronouncement by the Attorney General that the program in this case was illegal. That implies no discretion. That's exactly the same situation that was presented in Heckler v. Cheney itself. If you look at Heckler, the FDA said two things. One, we don't have jurisdiction over this area. Two, even if we did have jurisdiction, we would choose not to exercise it. The fact that the agency said the first thing didn't stop the court from affirming the second thing and saying that that was committed to agency discretion by law. Where is the discretion exercised here? What's it, Secretary Cheney? I'm sorry, the Acting Secretary Duke? So, Acting Secretary Duke as well as Secretary Nielsen said two things. She said that taking into consideration both the Texas litigation and the Attorney General's letter, she concluded that DACA should be rescinded. That does not say I think DACA is illegal and I must do it. It does not say because the Attorney General said this I have no discretion. It simply says DACA should be rescinded taking into consideration those two things. So, I do think it is an exercise of enforcement discretion to choose to rescind non-enforcement policy. Judge Bates, in his opinion, suggested that that was, in his words, suspicious for a number of reasons. He also said, and I think other courts have said as well, that in making those kinds of policy considerations, you have to consider the reliance interests of the parties affected, which did not happen in this case. So, I think that's conflating two different issues, Your Honor. Again, the first question is, is this the type of decision that is a form of enforcement discretion that's committed to agency discretion? The second is, does it matter what her rationale was? The decision to rescind a non-enforcement policy is clearly the type of decision that is non-reviewable. It is a decision about whether or not to enforce the law. We know from the Fourth Circuit's decision in speed mining that the decision to enforce the law, just like the decision not to enforce the law, is non-reviewable. The fact that it's a broad decision rather than an individual decision doesn't matter. We know that from Cheney itself because that was a question about whether to enforce the food and drug laws against the entire death penalty drug industry. So, this is the type of decision that is non-reviewable. Why isn't it more than that, right? So, I'm totally with you. If what they were doing was saying, we're not going to enforce, right, and that's the first half of the Nielsen memo in DACA, right? It says, agents, don't go enforce, don't go remove people who meet these criteria. But then the second half of the Nielsen memo does something different, right? It says, we need to develop a program, and this is the programmatic argument they made. One might say this, I should say. That it does more than just non-prosecution. It's an affirmative grant to private citizens, right? So, it's not directions to agents to non-enforce. It's an affirmative grant to those individuals of status, and I know we don't want to call it status, and it's maybe not technically status, but it is a nature of being that is deferred action, that is lawful presence, that is well beyond just mere non-enforcement, right? And it comes with attendant benefits, right? So, why is it, when we think about this, it really is not a discretion in a non-enforcement sense. It's really something more. It's an affirmative grant. Why is that theory, which is trying to encapsulate their argument, why is that wrong? So, I think it's wrong because of the fact that it is not conferring status. You are right that it is more than just an individual decision not to enforce against a particular person, but what deferred action is that is more than that is it is a formalized forbearance, but that is what it is. It is giving an individual formal notice that the government is going to forbear from removing them, but it confers no right and confers no status. And you are right that there are benefits that attach to it pursuant to preexisting regulations that were passed, pursuant to notice and comment that say that if you get this form of prosecutorial discretion, then pursuant to other statutes and other authorities, you can get certain types of benefits like work authorization. But it is triggered by what is only prosecutorial discretion. But when Napolitano says, Napolitano could have said, hey, these folks don't remove them, period. But instead she says, no, no, I want to grant them deferred action. And she does so with the knowledge that if she grants them deferred action, then they get these attendant benefits. In fact, she begins the memo by saying, listen, we are administratively closing folks, we are exercising prosecutorial discretion already, but something more is needed. We need to grant them deferred action. Well, I want to understand why we don't link those things, because she knew they were linked. The administration in enacting DACA well understood that they were linked, that once they got deferred action, that these attendant benefits came with it. Employment, Social Security, maybe gun ownership, all sorts of things happen, at least gun possession. And they knew that in making the decision. And they didn't just say, we're not going to enforce. They said, affirmatively, we are going to grant them this category. I think there are two steps. The first is deferred action is more than just non-enforcement, but it is different from the other benefits you're talking about. It is a formalized forbearance. There is a difference between saying certain people are low priorities, we're just not going to go after them, versus formally telling people that we are not going to remove you, we don't have any intention of removing you. Of course, circumstances can change. You don't have any rights. We can change it all. But it is a formalized forbearance removal. Now, you are right that once you do that, certain benefits can come in. I don't think that that changes the fact that it is a form of prosecutorial discretion. If, for example, everyone knows that if you choose not to prosecute a drug offender and you put them into a drug diversion program, that might have various benefits. They might get access to drug treatment programs, rehabilitation programs, and all the rest. The fact that a prosecutor knows that in the back of their mind, the fact that the prosecutor might even purposely have chosen not to prosecute someone because those benefits will kick in, does not change the fact that the choice not to prosecute is a prosecutorial discretion decision. The fact that there are benefits that attach to the exercise of prosecutorial discretion does not change the fact that this is the exercise of prosecutorial discretion. You used the drug diversion example. The example I was thinking of was a deferred prosecution agreement that comes with attendant benefits as well. Is there a reason why something about that doesn't seem exactly analogous here? Why is it that you really believe that placing someone into a program in the criminal context seems to me fundamentally different than giving them these rights, that is, the right to be here legally, to be employed, to get Social Security, as a matter of principle? Your Honor, I don't understand how a policy of prosecutorial discretion could be transformed into something else merely because there is a preexisting regulation that says that people who receive prosecutorial discretion get certain benefits. That regulation has been on the books. For example, the work authorization regulation has been on the books since, I believe, 1987. There are all forms of deferred action that Congress itself has recognized, much different programs than this program but smaller programs. Those programs all, when you get that deferred action, the work authorization kicks in. It doesn't change the fact that the deferred action itself is a prosecutorial discretion decision. Let me change the hypothetical a little bit. If you had a scenario where DACA, instead of granting deferred action, it said only this. It said, if you meet these threshold criteria, we will exercise our discretion to grant you work authorization, fully within our discretion to grant you work authorization. We look through these factors and then we exercise our discretion and we grant you work authorization. Would that be reviewable under Cheney? No. Sorry, yes. The grant of work authorization itself, that decision, whether to grant someone work authorization, that would be reviewable because that's the granting of a type of benefit, but that's not what's happening here. It's a granting of a type of benefit, but it's totally within the discretion of the secretary. You look at the authority to the extent that it exists at all, it's sort of this negative implication of the secretary can view someone as being lawfully present and grant them that authority. The authority for whatever it is, 274A, is not a standard on which we could judge his or her discretion in granting it. I take the point, Your Honor, but I think that, and maybe you might even be right that the decision about whether to grant or deny work authorization, maybe it too is not reviewable, but the reason prosecutorial discretion is different is that is a very specific type of non-enforcement that has a long tradition in history of not being reviewable in a way that I think is different from granting benefits. That's the tradition that Heckler relied on. It was a decision about whether or not to enforce the law against someone is the sort of decision that has traditionally been non-reviewable unless there's something in the statute that constrains that decision. In this case, nothing in the INA required the DHS to have DACA. Nothing in the INA prevented DHS from rescinding DACA, and they haven't argued otherwise. Let me get back to this issue about what memo, what decision maker is the appropriate one to consider in this case. I get that point. I don't think they contest that the agency could, as a matter of discretion, rescind DACA, but in this case, the acting secretary relied on a determination that the program was illegal, not that she was exercising her discretion. Did I hear you say that we could consider Secretary Nielsen's subsequent rationale as part of this record? I do think you could consider Secretary Nielsen's. But aren't we generally limited to the rationale offered by the agency and the record at the time? That's right, Your Honor, but what I would say is it is well recognized that if there is a problem with the agency decision because it's not sufficiently reasoned, the normal remedy in that case is to remand to the agency to provide further explanation. That is exactly the genesis of the Nielsen memo is that Judge Bates in D.C. said that the Duke memo was insufficient, and so she provided further explanation. Yes, she also found that insufficient. That is true. But to be clear, we think that the Duke memo is actually sufficient, and we think you could uphold it solely on that. But if the court has concerns about the Duke memo. You're saying that the September 5th memo is sufficient? Yes. From Duke, and that's the one that relies on terms of your recession? Yes. Who made an error of law? I don't agree they made an error of law, but more importantly, I don't agree. Well, he said that the courts had said it was unconstitutional. I don't think that's a fair reading of that letter, Your Honor. I think what he was saying is that the courts had found it was a violation of the statute. The nature of the statutory violation is such that he thought it was unconstitutional. In fact, it's true, right, that the courts, when we talk about the courts, the Supreme Court directed briefing on whether DAPA, which we're sort of thinking of being similar to DACA, that DAPA violated the Take Care Clause. That's right, the Supreme Court added. Right, so when cert was granted on the Texas litigation, the Supreme Court says, hey, y'all are only addressing the statutory argument. Don't forget about this constitutional argument. The constitutional argument that was raised below and that the Supreme Court ordered briefing on was the Take Care Clause. Yes. And so I want to ask this question, right? So if we've got a scenario where the Attorney General is saying it's unconstitutional and is talking about litigation and the Supreme Court has identified what the unconstitutional provision is, that is the Take Care Clause, right, why shouldn't we be looking at whether this violates the Take Care Clause within the judgment of the administration in determining whether, and by this, I mean DACA violates the Take Care Clause, right? Why isn't that the sort of inquiry that's secondary to the statutory argument that Judge Smith adopted? There's a secondary argument that the Supreme Court directed to be considered, and we don't know because it was a 4-4, one-line affirmance, but the fact that they directed the parties to address it suggests at least that it was part of that litigation and something that at least some members of the Supreme Court believed was necessary. In fact, four members, because they added the question, at least four members needed to vote to add that question to the grant. Your Honor, I don't think the Court needs to reach the Take Care issues in this case for two reasons. First of all, the question here is whether we were entitled to rescind DACA. I get that, but what I'm saying is posit that we are sort of past, you know, your initial hurdles, and we are now in a world of trying to evaluate whether, as a matter of law, the decision was correct, and, you know, assuming it actually says it's unlawful instead of, I think as you correctly indicate, says it's likely unlawful or may be unlawful. But if we're in that world, why aren't we evaluating whether it violates the Take Care Clause, and then I'll add this so you can answer it in total, is recognizing the Take Care Clause may have some justiciability problems of judicial standards. Why shouldn't we be deferring to the executive's interpretation of that constitutional provision under their own authority and, indeed, obligation to interpret the Constitution? Well, again, Your Honor, we think that it violates the statute, so under standard principles of constitutional avoidance, I don't think the court needs to reach any sort of Take Care issues. And we reject that. If the court rejects the argument that it's a violation of the statute, but nevertheless thinks it might be a violation of the Constitution, I suppose the court at that point would then be entitled to consider that question. I don't think either side has briefed the question, Your Honor. But if I could turn back, just one last point on reviewability before I turn to the merits of the APA claim, I do think it's very important that their entire argument for why this is reviewable is largely that, as Judge Dan suggested, because the rationale given was they say it's unlawful. And I think beyond all the courts that have considered this issue up to this point said it's reviewable. They have. Judge Owens in the Ninth Circuit did dissent on this exact issue. We think Judge Owens' dissent is quite right. He dropped a footnote in. It was more than a footnote. He wrote an opinion. He says his opinion is a concurrence, first of all. Correct? Yes. He concurred in the judgment. He calls it a concurrence. There's a footnote that indicates he disagrees on the reviewability, but all the courts that have considered the question or argument have ruled against you. Yes, but it's more than a footnote. That this appeal comes from. That's correct, Your Honor. It's more than a footnote. He wrote an opinion explaining it. His opinion is correct, and we think we should carefully consider it. The basic point is the point that Judge Richards made. They could all be wrong, but they've all ruled against you. That's right, Your Honor, because the key point is the point from BLE. BLE makes clear that if a decision is of the type that is not reviewable, the rationale given doesn't matter, even if the rationale given is a legal one. If a prosecutor says, I'm not going to prosecute this case because I don't think the law allows it, that is still non-reviewable. That's what BLE squarely says. It doesn't matter that he's saying that. You're talking about a prosecutor that works for the Attorney General of the United States. There's no difference. I'm going to prosecute this case. The Attorney General has the prosecution power. You're talking about a criminal prosecution. Right. There's no difference between criminal and civil. We know this from Heckler v. Cheney. Heckler v. Cheney was a civil case. It was the FDA, and Heckler relied on the analogy to criminal prosecution. BLE, by the way, was also an agency case. BLE was an agency case about whether to reconsider. And in the context of an agency case, the Supreme Court analogized to a criminal case and said, if a prosecutor says, I don't have legal authority to do this, it's still non-reviewable. When you had the colloquy about BLE, he points to the D.C. Circuit's decision in UAW v. Brock. I urge the court to look at Brock. Brock says exactly what we have said. Brock says that the decision not to enforce is not reviewable, even when it's given for legal reasons. What Brock then goes on to say is maybe you can review the underlying rationale on its own terms, but you cannot set aside the enforcement decision. Brock supports us. I urge the court, as he said, to go look at Brock. And you're arguing that case in the context of the appeal you're taking from Judge Bates. Yes. But you're trying to skip that step and go directly to the Supreme Court. Right. Well, we have a final judgment in the Ninth Circuit, so we're filing an almost fair petition. We think it makes sense to consider the two cases together. Turning to the merits of the APA claim, and we've already talked at least a little bit about this. Before we do that, I want to get to that question, too. But maybe I just missed it and was thinking about something else. But Judge Diaz asked the sort of question about explain to us why we should consider the Nielsen sort of supplementation, if you would. Help me sort of understand that a little bit, because in other places you seem to be suggesting that, you know, we shouldn't be doing discovery here because we're bound to the record that was considered by the decision maker. Yet here you're saying, yeah, but you ought to also consider the Nielsen memo. Help me understand, what's the basis for doing that? So I'll say two things. The first is we don't think you need to consider the Nielsen memo. We think the Duke memo by itself is sufficient. If the court disagrees. We don't need to consider it. Do not need to. Sufficient because it also is a matter of discretion or because it doesn't matter whether it is or not. We think that both, Your Honor. Both we think that whether it said it was purely illegal or because it said I'm exercising my discretion not to do it because either it's illegal or at least it's likely illegal. All of that is both non-reviewable and not arbitrary and capricious. But if the court disagrees with any of that, we do think that in those circumstances it's appropriate to look to the Nielsen memo because the normal remedy for an arbitrary and capricious agency action is to remand to the agency to provide further explanation. That's exactly what the Nielsen memo is. In response to Judge Bates' decision, Secretary Nielsen provided further explanation from the agency. There's a case from the D.C. Circuit called Alfarma v. Levitt, which addresses these sorts of circumstances and says, of course, we will consider what the agency provides as further explanation if there's a concern that the agency's initial explanation was not sufficient. And that was in response to Bates' order. I mean, this wasn't sort of a voluntary decision by DHS. Judge Bates ordered the Secretary to provide that further explanation. He vindicated the opinion but stated to give the agency the opportunity to provide a further explanation, which the agency then did. Before you get to the merits, I know you want to get there. I think we're going to give you enough time to do that. But I want to turn back to Judge Bates' opinion because I want to read an excerpt from the opinion and ask you to tell me why he's wrong. At page 34 of his opinion, the first one, he says, I recognize the presumption against reviewability of agency decisions committed to the agency's discretion. But then he says, under the D.C. Circuit precedent, of course, the D.C. Circuit deals with these kinds of issues all the time. He says, an enforcement decision is exempt from the presumption of unreviewability if it is expressed as a general enforcement policy and it relies solely on the agency's view of what the law requires. What about that is incorrect? With all due respect to Judge Bates, I think he's just misreading D.C. Circuit precedent. So he's talking about a case called Crowley. And I'll say two things about Crowley, which Crowley is subsequent to Brock. Brock says exactly what we said, which is the enforcement decision itself, not reviewable, even if it rests on a legal rationale. And Brock is whose case? D.C. Circuit. It's 1986. Crowley is either 87 or 91. I can't exactly remember right now. So are they inconsistent or what? I don't think so, Your Honor. I think what the point is, if you look at Brock, Brock says the enforcement decision itself, not reviewable, even if it rests on a legal rationale. What it then says is the legal rationale itself, sometimes reviewable. You can review it basically as an interpretive rule that happened to be embedded in enforcement decisions. What they're basically saying is it's the flip side of BLE. Just like a nonreviewable decision doesn't become reviewable because you give a legal reason, so too an otherwise reviewable interpretive rule doesn't become unreviewable because you bury it in an enforcement decision. If you look at Brock, it makes this very clear. What Crowley does is Crowley informs the second step of that analysis. It says what are the circumstances in which we will say we will extract out of an enforcement decision what is essentially an interpretive rule and review that. But what Crowley did not say, and this is the key for this case, is it didn't say you could review the underlying enforcement decision. And we know that it didn't say that because in Crowley no one was challenging the underlying enforcement decision. In Crowley, the facts of that case were a party sought a waiver from an agency. They wanted a waiver so they could compete against a third party. The agency denied the waiver, but it denied the waiver on the ground that there was no competition at all. The third party then came in and said, no, no, no, we are in competition. So they were challenging the underlying legal substantive rule. They weren't challenging the enforcement discretion denial of the waiver. They were happy about the denial of the waiver. I just think that Judge Bates has misread how Crowley operates. Isn't the underlying substantive rule here the Attorney General's decision that the statute is unlawful? Right, and that is not something that they have. That's just enforcement discretion, right? Whether or not you can have deferred action is not a question about their substantive rights. It is not a question of, for example, whether they are removable. It is not a question, like in the FDA context in Heckler, of whether something was a prohibited drug. It is only a question about whether we have the authority to have a non-enforcement policy. It is not enforcement discretion all the way down, and that's why they can't get a review of it. Let me ask you just a second about this idea about the general enforcement policy, because I think this has come up in a couple of different contexts. It seems to me, at least the attempt, if you take DACA on its face, Napolitano's memo at least, except operating procedures may be different, but Napolitano's memo on its face, it's designed to not be a general enforcement policy, right? It's instead designed to be individualized. For each applicant, there's an evaluation of that particular person, right? That strikes me as why this is not, DACA should not be viewed as a general enforcement policy, because it requires for each person, what's your background? How long have you been here? How old are you? Specific determinations. Are you a risk? Those specific determinations, it strikes me, are individualized, in fact, sort of designed to be so by the DACA memo. And that that, regardless of the misreading, that also suggests to us that the DACA itself is not a generalized enforcement policy, it's actually individualized enforcement policy. No? Your Honor, I don't think whether something is an enforcement policy for purposes of non-reviewability turns on whether it's individualized or categorical. We know this from Heckler v. Cheney itself. Heckler v. Cheney was not a fight over whether the FDA was going to enforce against a given drug manufacturer or for a given drug. The entire issue in that case was, was the FDA going to enforce the food and drug laws against the entire death penalty drug industry? This is very clear from the opinion if you look at the relief that the plaintiffs were seeking. It's very clear if you look at the D.C. Circuit decision that was reversed in Heckler, especially put note 45 of that opinion. That was the exact argument the D.C. Circuit made, was this is a categorical decision. We should review it because it's not individualized enforcement. And the Supreme Court reversed and recognized it does not matter whether an agency chooses to exercise enforcement discretion on a one-off basis or a categorical basis. It is still enforcement discretion and it's still not reviewable. Now, all that being said, enforcement discretion decisions are only presumptively non-reviewable. What Heckler makes clear on pages 832 to 833 of the opinion is you can have statutes that constrain enforcement discretion. And if a statute constrains enforcement discretion, that is, of course, reviewable. That is why, for example, the Fifth Circuit could review DAPA because the plaintiffs in that case said and the Fifth Circuit held that DAPA was illegal under the INA. No one is making that claim here. No one is making the claim that the rescission of DACA violated the INA. That's why our claim is not reviewable, but the claim in the Fifth Circuit was. That is also why we are right that DACA is unlawful. DACA, like DAPA, did exceed the constraints on the agency's discretion, partly for the reason you were saying, that it was so broad and so categorical that it can't be viewed as a permissible exercise of enforcement discretion given the comprehensive INA scheme and the decision of Congress repeatedly to refuse to provide that sort of relief. But that is a question about why it is substantively impermissible as an enforcement discretion policy. It is not an argument that it is not an enforcement discretion policy, let alone that it is reviewable to rescind one. That reviewability argument that you make if we happen to disagree with these other courts and go along with you, that gets you past the statutory claims and you'd still be faced with the constitutional claim. That's true, Your Honor. And on the constitutional claim, we think that that claim is foreclosed by the Supreme Court's decision in AADC because the Supreme Court in AADC made clear that, as a general matter, you can't challenge immigration enforcement decisions on the basis of selective prosecution, which is essentially what they're arguing here. They are arguing that the decision to start, resume enforcement against- They're arguing that the decision is based on animus, specifically against a- That's right. And the claim in AADC- The claim in AADC- Based on, they list all these things that have been said by the president and the secretary and whatever. I mean, there's 22 of them or so specified in the complaint, and they say there are others that show the animus about all these people are murderers and rapists and all that, and that that violates at least the Equal Protection Clause. And again, the claim in AADC- I mean, but this non-reviewability doesn't get you past that. It doesn't get you- Right? No, but it doesn't apply to that. AADC does. It does not apply to that. I agree. Okay. Because AADC involved a claim that the government had discriminated against the individual aliens who were being removed on the basis of their First Amendment speech-protected activities. It was undisputed in that case that it was done on the basis of their First Amendment speech-protected activities. They're talking about equal protection here. Right. I don't think there's some rank ordering of the provisions of the Constitution that it's okay to discriminate. I don't think Mexicans or Latinos in the United States, because they're all rapists and murderers, and so we're going to keep them out. Your Honor, the Supreme Court- I think that's what they allege in this complaint. That is what- And that's what Judge Owens was talking about, I assume to some extent, in his concurrence in that Ninth Circuit case. He talked about the equal protection claim. He's the only one that talked about it over there. I understand, Judge King. What I'm trying to suggest is that AADC makes clear that you cannot challenge immigration enforcement decisions. There's not, like, some special rule for equal protection claims as opposed to the First Amendment. There's not some rank ordering of the Bill of Rights that says that it's A-okay for the government to discriminate on the basis of speech, but not okay to do it on the basis of race. The point of AADC is immigration enforcement decisions are not subject to these sort of selective prosecution claims because they give rise, they interfere with prosecutorial discretion, and because they create a serious risk of delay. Even if you set aside AADC, we still don't think that they have a viable equal protection claim. I think the most important thing to focus on is all of those statements you just referenced. Not a single one of them is from the person who actually made the decision in this case. Acting Secretary Duke, they don't have a shred of evidence, not a word of anything that she said that could be suggested indicates animus. And then there's a remarkable thing for them to try to impute to a cabinet secretary racial animus based on the statements of third parties. They don't have a case that's ever done it. Third party being the president that she works for. At least some of the statements are from the president. Even on the statements for the president, I don't think it's proper to impute to her invidious racial animus based on statements he made in unrelated context. But even as to the presidential statements, I don't think that even those are sufficient. Those statements, if you read them, do not – they express the president's views that we have a problem with illegal immigration. He expressed the president's views that some illegal immigrants – He said more than that we have problems with illegal immigration. He said that a lot of the – well, there are problems with illegal immigrants, including crime. He does not say that all illegal immigrants are – he doesn't say anything about the race of the immigrants. He references the fact that people are from Mexico. Nationality is different from race, especially for the federal government. The federal government routinely regulates on the basis of nationality. It can't be an equal protection violation for the government to draw lines on the basis of nationality. If you look at those statements in whole, in context, and with the presumption of regularity that the president of the United States accorded, especially when you're trying to then impute those statements to a cabinet secretary who has said nothing like that, I don't think it is proper to say that that gives rise to an equal protection claim. I will also point out that these statements seem far more innocuous than the statements that were at issue in the travel case, where the Supreme Court nevertheless held that there was no establishment clause claim there. And we do think that the sort of Trump versus Hawaii – even if you disagree with us on AADC, we think that the Trump versus Hawaii standard is properly applied in this context, too. It is true it is not aliens abroad, but Trump versus Hawaii – I think you're arguing the equal protection clause, and that's what Judge Owens was talking about, the equal protection clause. I agree, Your Honor, but Trump versus Hawaii made clear that those standards – often those cases were equal protection claims. For example, Fialo versus Bell, which Trump versus Hawaii cited, was an equal protection case. Even more importantly, Raja versus Mukasey, which is a Second Circuit decision that Trump versus Hawaii specifically cited, was an equal protection case. And it was an equal protection case involving aliens who were already in this country. So their primary distinction about aliens abroad versus aliens here doesn't hold up. The Supreme Court made clear in Trump that the standard that it was applying applies across a different range of context and a different range of constitutional claims, and we think it does appropriately apply here. I know I'm fairly over my time, but if I can make two additional points, one on their summary judgment issue and one on the estoppel. On the summary judgment point, I think the most important point to focus on on that is the point that Judge Richardson made at the outset. Deliberative materials are just not properly considered to be part of the administrative record to begin with. We cited a case in our brief called the Comprehensive Community. It's from the Southern District of New York. You say you withheld some privileged materials. What I'm saying is there is not... You said you withheld privileged materials, but you didn't supply one of those privileged loans. That's right, Your Honor. This is a key point, and the case I was about to talk about lays this out. We are not saying that we are asserting deliberative process privilege. What we are saying is that deliberative materials are not in the record in the first place. If you look at the Comprehensive Community case that we cited in our brief, it says that courts have consistently recognized this. I urge the court to look at the cases they cited in that opinion. They cited two primarily, the MFAT case and the TAFIS case. Those cases might sound familiar, but they're the same cases they cite in their briefs. Those cases all recognize that deliberative materials just are not part of the record in the first place. We don't have to log them. They don't belong in the record to begin with because deliberative materials are just not part of the record. Just like when this court reviews a district court judgment, no one expects the record that comes up on appeal to include the bench memo a clerk wrote to the district court judge. So, too, no one expects a memo that the chief of staff wrote to the cabinet secretary about his legal analysis to go into the record. That is simply not what administrative review looks like, and the courts have consistently recognized that. That, I think, largely obviates their arguments about the administrative record because other than that, they don't have any reason to explain why they think that the record is deficient here. Given the nature of the decision that was made, one that was based on legal decisions and legal rationales, one would not expect there to be lots of other materials other than deliberative materials. The agency has certified that the record is complete. There is a presumption of regularity that attaches to that certification, and they haven't rebutted it. If I could turn to the estoppel claim briefly, I think most of these points were hit during the argument, but I'd just like to tick them off. The first is the Supreme Court has never recognized an affirmative estoppel claim against the government. Moreover, the Supreme Court— It hasn't prohibited it, has it? Well, I think it is fairly in the teeth of the court's decisions in cases like Alexander v. Sandoval that recognize that courts shouldn't be implying causes of action, let alone implying causes of action against the federal government. But if you set aside that, the second point is they've never recognized an estoppel claim against the government, period, not even in the defensive context. What about U.S. v. Cox? She says that the Fourth Circuit—and we're obviously bound by the Fourth Circuit— her claim was, and I wrote it down, that Cox authorized a freestanding estoppel claim. So I don't think that's right, Your Honor. Cox was a case about which of two different components of the federal government was going to pay for a psychiatric exam, whether it was going to be DOJ or whether it was going to be the federal public defender. And it was in that context that the court said, well, look, DOJ had a guideline. We're going to continue to enforce the guideline. The federal government can work it out amongst themselves if they want to do it differently. I think that's hardly support for the notion that a private party can come in and seek estoppel against the government. The Supreme Court has said again and again that it has never, ever recognized such a claim, and while it has left open a window to it, it has never actually done it. But if you were going to do it, you would at a minimum need to have affirmative misconduct, as all the cases recognize, and here they can't assert affirmative misconduct for two reasons. The first reason is the policy itself makes crystal clear it can be changed. I would urge this court to look. It's JA 1004. It's 1004. It's the page in the JA that has the instructions for applying for DACA. That is where each and every DACA applicant, when they request a DACA, that contains the information sharing policy. And right underneath where it says the information sharing policy, it says it can be modified or changed at any time. And as Judge Diaz noted, at any time doesn't make any sense if it's only talking about prospectively. You wouldn't need to tell someone who's signing a form, hey, by the way, we can change this at any time, if you're talking about other people. The only reason you say at any time on a form someone is signing is to tell them that going forward, this policy could be changed. And it's for exactly the reason Judge Richardson said. We weren't going to bind ourselves to forever having this policy, and at that point, people can make a decision. We told them that our present policy was that we weren't going to share it except with certain exceptions. We could change that, and people made a decision based on that. The last thing I'll say is there actually hasn't been a change in policy, and they haven't identified anything that actually does change the policy. All they have said is that FAQ. But the policy, as you understand it, that is that would allow for retroactive rescission of any information sharing limitations, right? I'm sorry, say that again? So there hasn't been a change in policy, but your view of the policy is that the information sharing program could be rescinded, superseded retroactively. That's correct. In that sense, that doesn't really help them, right? Well, yes, they lose for multiple reasons. But, yes, they lose because we could change it at any time on the face of the policy that they originally had. So they can't claim affirmative misconduct because the government put everyone on full notice that the policy could change. Maybe these children that are two or three years old are on notice of it. I'm sorry, what? Children. This is a children's policy. You're saying all these young children are on full notice of what the government is going to do. Well, you can only apply for DACA if you were over 16 years old. So they all read and signed the form. And, yes, we do think that they were on full notice. And it is certainly not affirmative misconduct by the government to do what it said it could do. The question I was asking was you say the policy hasn't changed, but it doesn't matter, I suppose, if your view is that the policy can be rescinded at any time retroactively. That change doesn't really give them any assurance. It doesn't help them. Look, I agree. I think we could win this claim for multiple reasons. There's no affirmative misconduct because we could change it at any time. There's also no affirmative misconduct because we, in fact, have not changed it. Either one of those is a sufficient and independent reason for us to win. And if I just point out why there hasn't been any change, they haven't identified any actual instance where someone said we're going to start sharing information where we didn't before. Well, of course, they say they don't have to wait for that. So what's your response to that? Well, they have to at least allege that the policy has changed. They can't say we think it might change, we're worried it might change. As Judge Richards said, I don't even think they have Article III standing to sue if they're just saying we're worried that something might happen. And they haven't actually alleged any credible basis to say that the policy has changed. All they've pointed out is that in one FAQ there were a couple of adverbs added. They added the word generally and they added the word proactively. That doesn't say we are going to start sharing information in certain other special nonproactive situations. It just said that we generally won't do it proactively. They don't have any evidence that it's actually been a change, and the department has made clear in subsequent notices that there has been no change. If there are no other questions, thank you. Thank you very much, sir. Liz Dillingham. Unless the court would prefer a different topic, I'd like to start with the issue of reviewability. The government relies primarily and almost exclusively on the Heckler v. Cheney decision, but that decision simply does not apply here. Cheney holds only that a decision not to enforce is unreviewable. The rescission of DACA is the exact opposite of that. It is a decision that it is going to start taking enforcement proceedings. No, but it's not actually a decision to enforce, right? You agree that post-recession that nothing in the recession memo requires any agent to go take any affirmative action to remove any individual. It does not require any individual action. That is correct. But it is a decision. It is the opposite of a decision not to enforce. It is a decision that DACA as it exists, the government believes that it is illegal and unconstitutional and that it cannot go forward with that decision. If you wipe DACA off, then DHS is left with the statutes and authorities that it had before DACA, right? Correct. Among those include, as AADC recognized, the right to grant deferred action independent of DACA, right? It does. And includes the right to administratively close removal proceedings, as Napolitano recognized in the DACA memo itself, to grant parole, to grant all sorts of different discretionary relief, right? All correct. And once again, I think we need to take this in context. The government is moving as quickly as possible on this DACA rescission. Once again, it has filed cert petitions before some of the appellate courts have even ruled here. We have every indication that the government intends to move forward with enforcement proceedings, should it prevail on this issue. But again, Cheney does not apply here because Cheney only applies to decisions not to enforce. It only says the decisions not to enforce are unreviewable. In fact, footnote four that the government relies on heavily explicitly leaves open whether a refusal by the agency to institute proceedings based solely on the belief that it lacks jurisdiction is reviewable. And it expressly states that such a – But what it does say, right, is it says what's reviewable, like to the extent something's reviewable about an act, an affirmative act, is that that action provides a focus for review, right? So that means if you remove somebody, then that's the review that is had, not of the policy or decision to enforce or not enforce as a general matter, but the specific action, the specific enforcement or non-enforcement decision. We disagree with that position. We believe that DACA itself and the rescission of DACA is a policy change, an overall policy change that involves not just an enforcement decision but also a decision to withdraw some of the benefits attendant to DACA status. Do you agree that DACA itself included individualized discretion for each individual that applied? DACA did have individualized discretion. That's correct. But I'd like to focus on what Judge Bates said about the agency's discretion with respect to rescinding DACA. Judge Bates actually said in his opinion two things that I think are critical to this Court's understanding. Judge Bates said that an official cannot claim that the law ties her hands while at the same time denying the Court's power to unbind her. So Acting Secretary Duke rescinded this policy on the basis of the government's belief that it was illegal and unconstitutional, and that alone is grounds to make the policy itself reviewable. If the Attorney General came out and said, I would love to prosecute Defendant X, but I cannot prosecute him because the First Amendment and principles of statutory interpretation mean that as a matter of law I can't convict him, is your position that that would be a reviewable decision? It is not because that would be a decision not to enforce and not to prosecute. That's the whole distinction. So in other words, the legal reason only matters in the negative? Under Heckler v. Cheney, yes, in fact, that's correct. And if I can turn back to Judge Bates, what he said was, in this context, when an enforcement policy is predicated on the agency's view of what the law requires, the agency action is not non-reviewable in the first place if it is based entirely on the interpretation of the statute. And if you look to then-Acting Secretary Duke's memo, her reason for rescinding DACA was based entirely on her interpretation that DHS did not have discretion to continue the DACA program. But what she actually says is that it should be. I mean, help explain. So the government argues, in its brief and otherwise, that there's nothing mandatory about Duke's memo, right? Should do this. You can look at the Attorney General's likely would be found. All of those are suggestive, not of a requirement of a certain action, but the availability of a certain action. And we disagree with that position. Our reading of Acting Secretary Duke's memo is that the government, in referencing then Attorney General Sessions' letter, that they did, in fact, find DACA unconstitutional and illegal. But nothing in Duke's memo – I mean, I understand that that's important for your claim, but what I don't see is where you see that in the memo. Because it says, should be, in taking into consideration all these things, including the reference to the take-care clause argument that the Supreme Court ordered, taking into account this litigation, it's clear to me that it should be, not that it must be, but it should be rescinded. Therefore, in setting the priorities of the department, I rescind it. And I would argue that the word should there should not be read as maybe I have discretion to do so. That was a – it should and must be remanded – or it must be rescinded. I mean, I agree that is simply – that's the end result of the Attorney General's determination that the policy is illegal. Yes, that is our reading of the letter as well, and that is consistent with what Attorney General Sessions said in his letter as well. That it is illegal, that it's unconstitutional. Again, we disagree with that position. We certainly don't concede that. But that was the government's position, and they therefore do not have discretion to continue the program. And does the Nielsen memo then save the day for the government? I'm sorry, Your Honor? The Nielsen memo, does it save the day? I don't believe it does. Are we entitled to consider it? Excuse me, Your Honor? Are we entitled to consider the Nielsen memo? I don't believe so. It's not part of the joint appendix. It's not properly before this court. But even if this court did decide to consider it, I don't think it changes anything. Again, the Nielsen memo essentially focuses on two things. One, the government's view that DACA was illegal and unconstitutional. And then a post hoc rationale of litigation risk that we don't think is well explained. And, again, simply no more than a post hoc rationale. The government also makes a half-hearted attempt, I suppose, to argue that AADC precludes the court from reviewing here. And we disagree with that. AADC applies to individualized enforcement decisions. That's simply not the case here. It applies to decisions to initiate cases, to adjudicate cases, and to enforce removal proceedings. Those are individualized assessments. AADC does not allow for that. And your position is that DACA itself is not individualized? No, again, Your Honor, we agree that DACA itself did involve individualized determinations of whether someone was eligible for status. But your claim is that the removal of that, the rescission of that, was not individualized? Correct. The policy change as a whole did not involve any individualized decisions, and, therefore, AADC simply does not apply here. Anything you want to say about the animus issue? Yes, Your Honor, absolutely. While, no, we don't have any statements from Acting Secretary Duke herself, again, we believe the administrative record is incomplete, and we were not entitled to any discovery. We don't, frankly, know who actually directed that this policy be rescinded. While it was Acting Secretary Duke who issued the memo, we know that Attorney General… Didn't the law actually require the Secretary to do it? Correct, Your Honor, but she does also work for the President. She was an employee of the Executive Branch, and we don't know who made some determinations behind the scenes. We believe we're entitled to additional discovery on that, especially given her reliance on Attorney General Sessions and his letter and some of the statements of animus that he made. We know that there are thousands of other documents out there, and we fully anticipate that some of those documents demonstrate animus as well. If there are no further questions, I'll conclude. Thank you very much. Thank you, Your Honors. We'll come down and re-counsel and take a short break.
judges: Robert B. King, Albert Diaz, Julius N. Richardson